1

2

3

4

5

6        **IN THE UNITED STATES DISTRICT COURT**

7        **FOR THE DISTRICT OF ARIZONA**

8

9   D. Ryan Jones,                              No. CV-13-00813-PHX-SRB (BSB)

10                    Petitioner,              **REPORT AND**
                                                **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                    Respondents.

14

15         D. Ryan Jones (Petitioner) has filed a timely Petition for Writ of Habeas Corpus

16   raising two grounds for relief.  (Doc. 1.)  Respondents filed an Answer asserting that

17   Petitioner's first ground for relief lacks merit and that his second ground for relief is

18   procedurally barred from federal habeas corpus review.  (Doc. 9.)  Petitioner has filed a

19   reply in opposition.  (Docs. 10, 11.)  For the reasons below, the Petition should be denied.

20   **I.    Procedural Background**

21         **A.    Guilty Plea and Sentencing**

22         On May 10, 2011, Petitioner pleaded guilty in Maricopa County Superior Court

23   (trial court), case CR2008-166193, to one count each of molestation of a child, attempted

24   molestation of a child, and sexual abuse.  (Doc. 9, Exs. A, B, D.)  All of the counts to

25   which Petitioner pleaded guilty were charged as dangerous crimes against children.  (*Id.*)

26   During the change of plea hearing, Petitioner acknowledged that he understood that, as

27   set out in the plea agreement, the offenses to which he was pleading guilty carried prison

28   sentences of ten to twenty-four years, five to fifteen years, and two-and-one-half to

1    seven-and-one-half years, respectively.  (Doc. 9, Ex. D at 5-6.)  Petitioner also stated he

2    understood the sentences could be ordered to run consecutively to each other and that for

3    two of the three charges he could be placed on lifetime probation.  (*Id.* at 5–7.)  The trial

4    court sentenced Petitioner to a term of sixteen years' imprisonment on the first count,

5    molestation of a child, and to lifetime probation on the other two counts, attempted

6    molestation of a child and sexual abuse, which were probation-eligible counts.  (Doc. 9,

7    Ex. E, Ex. F at 48-49.)  The trial court also ordered that he register as a sex offender for

8    life.  (Doc. 9, Ex. E at 4.)

9            **B.      Post-Conviction Proceedings**

10           On November 12, 2009, Petitioner initiated state post-conviction proceedings by

11   filing a notice of post-conviction relief pursuant to Arizona Rule of Criminal Procedure

12   32.  (Doc. 9, Ex. G.)  Post-conviction counsel filed a notice with the court stating that,

13   after reviewing the record, he was unable to find any issues for post-conviction review.

14   (Doc. 9, Ex. H.)  Petitioner then filed a pro se petition alleging that: (1) the trial court had

15   improperly enhanced his sentences; (2) his sentences violated double jeopardy; (3) trial

16   counsel was constitutionally ineffective; (4) the state presented false evidence at

17   sentencing; (5) the trial court erred in weighing the aggravating and mitigating factors at

18   sentencing; (6) the trial court sentenced him under a statute lacking a rational basis;

19   (7) the sentencing statute was arbitrarily and discriminatorily applied to him; (8) the

20   imposition of lifetime probation violated his constitutional rights; (9) the imposition of

21   lifetime sex-offender registration violated his constitutional rights; and (10) he was

22   convicted under an unconstitutionally vague statute. (Doc. 9, Ex. I.)

23           The trial court denied post-conviction relief.  (Doc. 9, Ex. L.)  The court noted that

24   Rule 32.2(a)(3) precludes post-conviction relief on any claim waived at trial, on appeal,

25   or in any previous collateral proceeding.  (*Id.*)  Thus, the court found that by pleading

26   guilty, Petitioner had "waive[d] all non-jurisdictional defenses and defects occurring

27   prior to the plea."  (*Id.*)  The court concluded that eight of Petitioner's ten claims were

28   precluded.   The court noted that, while most of Petitioner's claims related to his

1   sentencing, "all of [those] claims could have been raised and litigated prior to the plea in

2   this case." (Doc. 9, Ex. L at 2.) The court rejected on the merits Petitioner's remaining

3   two claims ─ that trial counsel was ineffective, and that the trial court erred in weighing

4   the aggravating and mitigating factors. (*Id.*)

5       Petitioner filed a petition for review in the Arizona Court of Appeals. (Doc. 9,

6   Ex. M.) The court of appeals affirmed the trial court's finding that Petitioner had waived

7   numerous claims by pleading guilty. (Doc. 9, Ex. A.) The court of appeals also affirmed

8   the trial court's rejection of Petitioner's two other claims on the merits, and affirmed

9   Petitioner's convictions and sentences. (*Id.*) Petitioner sought review in the Arizona

10  Supreme Court, which denied review on December 12, 2012. (Doc. 9, Ex. N.)

11          **C.    Petition for Writ of Habeas Corpus**

12      On April 22, 2013, Petitioner filed the pending petition for writ of habeas corpus

13  raising two grounds for relief. In Ground One, Petitioner alleges that he was denied his

14  Sixth Amendment right to the effective assistance of counsel. In Ground Two, Petitioner

15  alleges that he was denied his Fourteenth Amendment right to Due Process because his

16  sentence was enhanced "without a factual basis." (Doc. 1 at 6-7.) For the reasons set

17  forth below, the Petition should be denied.

18  **II.    Exhaustion and Procedural Bar**

19          **A.    Federal Court Review**

20      Ordinarily, a federal court may not grant a petition for writ of habeas corpus

21  unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To

22  exhaust state remedies, a petitioner must afford the state courts the opportunity to rule

23  upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

24  court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

25  ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly

26  present' his claim in each appropriate state court . . . thereby alerting that court to the

27  federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same). "A

28  claim has been 'fairly presented' if the petitioner has described both the operative facts

and the federal legal theory on which his claim is based." *Baldwin*, 541 U.S. at 33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims.  *See Coleman*, 501 at 731 32.  Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims.  *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted.  *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds.  *See Beard v. Kindler*, 558 U.S. 53 (2009).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S.

at 731-32.  In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."  *Harris v. Reed*, 489 U.S. 255, 260 (1989).  A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim.  *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985).  A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed."  *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).  If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate.  *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases."  *Coleman*, 501 U.S. at 732.  Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim.  *See id*. at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims.  *See Reed v. Ross*, 468 U.S. 1, 9 (1984).  Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits.  *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court.  *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

**B.      Petitioner's Claims are Not Procedurally Barred**

In Ground One, Petitioner argues that he received ineffective assistance of counsel.  Petitioner properly exhausted this claim by presenting it to the appellate court on post-conviction review.  Accordingly, the Court considers the merits of Ground One in Section III.

In Ground Two, Petitioner argues that his Due Process rights were violated because the trial court did not articulate a factual basis for the "targeting element" of the sentencing enhancement under Ariz. Rev. Stat. § 13-604.01.  (Doc. 1 at 7.)  Although Petitioner presented this claim in post-conviction proceedings, the trial court cited Rule 32.2(a)(3) and found that Petitioner's guilty plea precluded review of his sentencing claims because "all of [those] could have been raised and litigated prior to the plea in this case."[1]  (Doc. 9, Ex. L at 1-2.)  The appellate court affirmed the trial court's ruling that "by pleading guilty, [Petitioner] had waived his right to raise" his claims that his sentence violated double jeopardy, the application of lifetime probation was unconstitutional, and that the application of the sentencing statute was unconstitutional as applied to him.[2]  (*Id.* at 2.)  The court further noted that "as part of his plea agreement, [Petitioner] waived and 'g[ave] up any and all motions, defenses, objections, or requests which he . . . ha[d] made or raised, or could assert [t]hereafter, to the Court's entry of judgment against him . . . and imposition of a sentence upon him . . . consistent with this agreement.'" (Doc. 9, Ex. A; Doc. 1-1 at 6.)

Respondents argue that Petitioner's challenge to his sentences is barred from federal habeas review because the state court applied Rule 32.2(a)(3), an adequate and independent procedural bar, to deny relief on Petitioner's sentencing claims.  (Doc. 9 at

---

[1]  Rule 32.2(a)(3) provides, in relevant part, that "[a] defendant shall be precluded from relief under this rule based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3).

[2]  The relevant statute in effect at the time Petitioner committed the offenses was Ariz. Rev. Stat. § 13-604.01.  It was subsequently amended and renumbered as Ariz. Rev. Stat. § 13-705.  (Doc. 9, Ex. A at 2 n.3.)  For ease of reference, the Court cites to § 13-604.01.

5.)  *See Wainwright v. Sykes*, 433 U.S. 72, 97 (1977) (federal court is barred from considering a claim that state court denied on an adequate state law ground independent of the merits of the federal claim).  Because the government "seeks dismissal based on the procedural bar, it . . . bear[s] the burden of demonstrating that the bar is applicable — in this case that the state procedural rule has been regularly and consistently applied in habeas actions."  *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  Petitioner agrees that, in general, Rule 32.2(a)(3) is an adequate and independent state ground.  (Doc. 1 at 28.)  However, he argues that Rule 32.2(a)(3) is not consistently and regularly applied to preclude a defendant who has pleaded guilty from challenging the legality of his sentencing raised in a Rule 32 of-right proceeding.[3]  (Doc. 1 at 28.)

Because a defendant who pleads guilty in Arizona waives the right to appeal directly to an appellate court under Ariz. Rev. Stat. § 13-4033(b), Rule 32 is "the only means available for exercising the constitutional right to appellate review."  *Montgomery v. Sheldon*, 889 P.2d 614, 616 (*Montgomery I*) (Ariz. 1995), *overruled in part on other grounds by State v. Smith*, 910 P.2d 1, 4 (1996).[4]  The Arizona Supreme Court has noted that "[i]t is through operation of the rules governing post-conviction relief that our constitutional guarantee of appellate review in all cases is effectuated for pleading defendants."  *Montgomery I*, 889 P.2d at 616 (citing Ariz. Const. art. II, § 24; *Wilson v. Ellis*, 859 P.2d 744, 746 (1993)).

Arizona courts have found that Rule 32 "encompasses a claim that a sentence was not imposed in compliance with the relevant sentencing law, at least for a sentence imposed on a pleading defendant."  *State v. Cazares*, 72 P.3d 355, 356 (Ariz. Ct. App. 2003); *see State v. Wood*, 2012 WL 4859122, at *1 n.1 (Ariz. Ct. App. Oct. 12, 2012)

---

[3]  By pleading guilty, Petitioner waived his right to a direct appeal under Arizona law.  *See* Ariz. Rev. Stat. § 13-4033(B).  However, he retained the right to seek review in an "of-right" proceeding pursuant to Rule 32.  *See* Ariz. R. Crim. P. 32.1 and 32.4.

[4]  Contrary to Petitioner's assertion (Doc. 11 at 5), *Montgomery* did not hold that a pleading defendant cannot waive the right to direct appeal.  *Montgomery*, 889 P.2d at 61 n.2 (stating that "we have never held, and we do not hold today, that a pleading defendant cannot waive his right to a direct appeal . . . .").

1    (noting that "a defendant may claim pursuant to Rule 32 that the factual basis for a guilty

2    plea was insufficient as a matter of law").  Arizona courts have also held that "the right to

3    be sentenced according to the law is not among the myriad rights pleading defendants

4    waive." *Cazares*, 72 P.3d 355, 356 (citing Ariz. R. Crim. P. 17.2)).

5           As discussed below, Petitioner has cited several cases in support of his assertion

6    that, at the time of his post-conviction proceedings, Rule 32.2(a)(3) was not regularly and

7    consistently applied to find a pleading defendant's claims of sentencing error precluded

8    in a Rule 32 of-right proceeding.[5]  *See Bennett*, 322 F.3d at 586 (stating that "[o]nce the

9    state has adequately pled the existence of an independent and adequate state procedural

10   ground as an affirmative defense, the burden to place that defense in issue shifts to the

11   petitioner . . . . Once having done so, however, the ultimate burden is the state's.").

12   Respondents have not cited controlling precedent to establish that, during the time of

13   Petitioner's post-conviction proceedings, Arizona courts regularly applied Rule

14   32.2(a)(3) to bar review of sentencing claims asserted in a pleading defendant's Rule 32

15   of-right proceeding.

16          Petitioner cites *State v. Szpyrka*, 224 P.3d 206, 207 (Ariz. Ct. App. 2010), in which

17   the court found that a defendant who pleads guilty and admits the existence of a prior

18   conviction can, in a petition for post-conviction relief, attack the sufficiency of the

19   evidence used to prove the factual basis of that prior conviction. *Id.* (citing *State v.*

20   *Johnson*, 689 P.2d 166, 167 (Ariz. 1984) (reversing court of appeals' finding that

21   admission of prior conviction in plea agreement constitute a waiver of the right to

22   challenge the factual basis)).

23

24   _____

25          [5]   Petitioner also cites several cases decided before 1992, when a defendant
     pleading guilty could challenge his conviction and sentence on direct appeal.  (Doc. 1 at
26   29 (citing *State v. Sullivan*, 482 P.2d 861 (Ariz. 1971); *State v. Leuck*, 481 P.2d 842
     (Ariz. 1971).)  After the legislature abolished direct appeals for pleading defendants in
27   Ariz. Rev. Stat. § 13-4033(B), Rule 32 was amended to provide for an "of-right" post-
     conviction proceeding in the court that rendered the challenged conviction or sentence.
28   Because Rule 32 "of-right" proceedings did not exist until 1992, cases decided before
     1992 are not helpful to the Court's analysis.

1    Petitioner also cites *Cazares*, 72 P.3d at 356, in which a petitioner pleaded guilty
2    to aggravated assault with a deadly weapon or dangerous instrument.  On post-conviction
3    review, he challenged his sentence arguing that the trial court erred in failing to consider
4    a statutory mitigating factor under Ariz. Rev. Stat.§ 13-702.  The post-conviction court
5    found that petitioner's claim did not appear to fall under any provisions of Rule 32 that
6    provide for relief, and alternatively denied relief on the merits of the claim.  *Id.* at 356.
7    The court did not discuss or apply Rule 32.2(a)(3)'s waiver provision.  On review of that
8    decision, the appellate court found that Rule 32 "encompasses a claim that a sentence was
9    not imposed in compliance with the relevant sentencing law, at least for a sentence
10   imposed on a pleading defendant."  *Id.* at 356.  Thus, the appellate court disagreed with
11   the court's initial finding, but affirmed its ruling on the merits.  These cases suggest that
12   Rule 32.2(a)(3) has not been consistently and regularly applied to preclude review of a
13   pleading defendant's sentencing claims raised in a Rule 32 of-right proceeding.

14   Respondents have not cited any controlling authority indicating that, at the time of
15   Petitioner's post-conviction proceeding, Arizona court's consistently and regularly relied
16   on a waiver provision in a plea agreement or Rule 32.2(a)(3) to find a pleading
17   defendant's claims of sentencing error precluded from review.  *See Bennett*, 322 F.3d at
18   586.  Instead, Respondents rely primarily upon *State v. Barrera*, 2013 WL 3871090
19   (Ariz. Ct. App. Jul. 26, 2013), in support of their argument that Rule 32.2(a)(3) precludes
20   post-conviction relief on an illegal sentence when defendant waives his right to challenge
21   his convictions and sentences in a plea agreement.  However, *Barrera* was subsequently
22   withdrawn and "ordered depublished."  *Id., withdrawn by State v. Barrera*, 314 P.3d
23   1277 (Ariz. 2014) (denying petition for review from denial of post-conviction relief and
24   ordering that "[t]he Court of Appeals' Opinion shall not be published pursuant to Rule
25   111(g), Arizona Rules of the Supreme Court").

26   Additionally, the other case Respondents cite, *State v. Shrum*, 203 P.3d 1175
27   (Ariz. 2009), analyzed whether Rule 32.2(a)(3) precluded review of a pleading
28   defendant's challenge to his sentence raised in a second post-conviction proceeding.  In

1    *Shrum*, following his plea of guilty, the defendant filed a notice of post-conviction relief

2    under Rule 32.  He later voluntarily dismissed that proceeding.  *Id.* at 1177.  Several

3    years later, the defendant filed a second notice of post-conviction relief challenging his

4    sentence.  As the court noted, "to avoid the preclusive effect of the dismissal of [his] first

5    PCR proceeding," the defendant argued there had been a "significant change in the law"

6    that would probably overturn his sentence.  *Id.*  Although *Shrum* considered whether Rule

7    32.2(a)(3) precluded the defendant's sentencing claim asserted in his second post-

8    conviction proceeding, it did not consider whether Rule 32.2(a)(3) would have precluded

9    review of the defendant's sentencing claim if he had raised it in his first post-conviction

10   proceeding.  Thus, Respondents' reliance on *Shrum* is misplaced.

11       Finally, Respondent's cite *State v. Swoopes*, 216 Ariz. 390, 403 (Ariz. Ct. App.

12   2007), which did not involve the application of Rule 32.2(a)(3) to bar review of

13   sentencing claims raised by a pleading defendant in a Rule 32 of-right proceeding.

14   Rather, in *Swoopes*, the court found that Rule 32.2(a)(3) precluded review of the

15   petitioner's claim that the trial court's response to a question from the jury deprived him

16   of his right to a fair trial because the petitioner had not raised that claim at trial or on

17   direct appeal.  *Id.* at 951-53.

18       Because Respondents have not met their burden of establishing that, at the time of

19   Petitioner's post-conviction proceedings, Arizona courts regularly and consistently

20   applied Rule 32.2(a)(3) to bar review of sentencing claims asserted by pleading

21   defendants in Rule 32 of-right proceedings, the Court will consider the merits of

22   Petitioner's challenges to his sentences in Section III.[6]

23   / / /

24   / / /

25

---

26       [6]  The Court decides only that Respondents have not met their burden in this case
     and does not decide that Rule 32.2(a)(3) does not apply to claims of sentencing error
27   raised by a pleading defendant in a Rule 32 "of-right" proceeding.  Moreover, the Court's
     resolution of the procedural bar issue is inconsequential because, as discussed in Section
28   III, Petitioner is not entitled to habeas corpus relief on his challenge to his sentences
     asserted in Ground Two of his Petition.

**III.    Petitioner's Claims**

    **A.    Standard of Review**

If a habeas petition includes a claim that was "adjudicated on the merits in State court proceedings," federal court review is limited by § 2254(d).  Under § 2254(d)(1), a federal court cannot grant habeas relief unless the petitioner shows: (1) that the state court's decision "was contrary to" federal law as clearly established in the holdings of the United States Supreme Court at the time of the state court decision, *Greene v. Fisher,* __ U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of" such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the facts" in light of the record before the state court.  28 U.S.C. § 2254(d)(2); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011).  This standard is "difficult to meet." *Harrington,* 131 S. Ct. at 786.  It is also a "highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal quotation marks omitted).

To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court that existed at the time of the state court's decision.  *Greene*, 132 S. Ct. at 44.  A state court's decision is "contrary to" federal law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

A state court decision is an "unreasonable application of" federal law if the court identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular case.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'"

1    *Richter*, 562 U.S.___, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652,

2    664 (2004)).   "[E]valuating whether a rule application was unreasonable requires

3    considering the rule's specificity.   The more general the rule, the more leeway courts

4    have in reaching outcomes in case-by-case determination."  *Id.*

5          When a state court decision is deemed to be "contrary to" or an "unreasonable

6    application of" clearly established federal law, a petitioner is not entitled to habeas corpus

7    relief unless the erroneous state court ruling also resulted in actual prejudice as defined in

8    *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  *Benn v. Lambert*, 283 F.3d 1040, 1052

9    n.6 (9th Cir. 2002).  "Actual prejudice" means that the constitutional error at issue had a

10   "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v.*

11   *Abrahamson,* 507 U.S. 619, 631 (1993).  "The *Brecht* harmless error analysis also applies

12   to habeas review of an error with respect to sentencing, in other words the test is whether.

13   such error had a 'substantial and injurious effect' on the sentence."  *Hernandez v.*

14   *LaMarque*, 2006 WL 2411441, at *3 (N.D. Cal., Aug. 18, 2006) (citing *Calderon v.*

15   *Coleman*, 525 U.S. 141, 145-57 (1998) (finding sentencing error harmless because even

16   if the evidence of three prior convictions was insufficient, petitioner was not prejudiced

17   by the court's consideration of those convictions because it found four other prior

18   convictions that would have supported the petitioner's sentence)).

19         However, when a habeas petitioner alleges ineffective assistance of counsel under

20   *Strickland v. Washington*, 466 U.S. 668 (1984), the *Strickland* prejudice standard applies

21   and the court does not engage in a separate analysis applying the *Brecht* standard.  *See*

22   *Avila v. Galaza*, 297 F.3d 911, 918 n.7 (9th Cir. 2002) (quoting *Jackson v. Calderon*, 211

23   F.3d 1148, 1154 n.2 (9th Cir. 2000) (stating that the court "need not conduct harmless

24   error review of *Strickland* violations under *Brecht* . . . because '[t]he; *Strickland* prejudice

25   analysis is complete in itself; there is no place for additional harmless-error review.")).

26         **B.    Standards to Establish Ineffective Assistance of Counsel**

27         The controlling Supreme Court precedent on claims of ineffective assistance of

28   counsel is *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner

1     must show that counsel's performance was objectively deficient and that counsel's

2     deficient performance prejudiced the petitioner. *Id*. at 687. To be deficient, counsel's

3     performance must fall "outside the wide range of professionally competent assistance."

4     *Strickland*, 466 U.S. at 690. When reviewing counsel's performance, the court engages a

5     strong presumption that counsel rendered adequate assistance and exercised reasonable

6     professional judgment. *Id*. "A fair assessment of attorney performance requires that

7     every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

8     circumstances of counsel's challenged conduct, and to evaluate the conduct from

9     counsel's perspective at the time." *Id*. at 689. Review of counsel's performance is

10     extremely limited. Acts or omissions that "might be considered sound trial strategy" do

11     not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

12         To establish a Sixth Amendment violation, a petitioner must also establish that he

13     suffered prejudice as a result of counsel's deficient performance. *Id*. at 691-92. To show

14     prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's

15     unprofessional errors, the result of the proceeding would have been different. A

16     reasonable probability is a probability sufficient to undermine confidence in the

17     outcome." *Id*. at 694. *See also Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir. 1998). The

18     prejudice component "focuses on the question whether counsel's deficient performance

19     renders the result of the trial unreliable or the proceeding fundamentally unfair."

20     *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The court need not address both

21     *Strickland* requirements if the petitioner makes an insufficient showing on one. *See*

22     *Strickland*, 466 U.S. at 697 (explaining that "[i]f it is easier to dispose of an

23     ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should

24     be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to

25     satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing

26     *Strickland*, 466 U.S. at 688).

27         "Surmounting *Strickland's* high bar is never . . . easy." *Richter*, 562 U.S.___, 131

28     S. Ct. 770, 786 (quoting *Padilla v. Kentucky*, 559 U.S.___, 130 S. Ct. 1473, 1485

1   (2010)).   Establishing that a state court's application of *Strickland* was unreasonable

2   under §2254(d) is even more difficult, because both standards are "highly deferential,"

3   and because *Strickland's* general standard has a substantial range of reasonable

4   applications. *Richter*, 562 U.S.___, 131 S. Ct. at 788 (citations omitted).   The issue under

5   §2254(d) is not whether counsel's actions were reasonable, but "whether there is any

6   reasonable argument that counsel satisfied *Strickland's* deferential standard." *Richter*,

7   131 S. Ct. at 788.

8               C.     **Ground One — Ineffective Assistance of Counsel**

9               In Ground One, Petitioner argues that his court-appointed and retained *Knapp*

10  counsel, Brett Turley and Tamara Brooks-Primera, were ineffective at sentencing for

11  failing to investigate and present evidence that Petitioner may suffer from Asperger's

12  Syndrome and of Petitioner's traumatic childhood.[7]  (Doc. 1 at 6.)  Petitioner presented

13  this claim on post-conviction review.   The trial found that Petitioner failed to establish a

14  colorable claim of ineffective assistance and the appellate court affirmed.[8]   (Doc. 9,

15  Exs. L, A.)

16              As an initial matter, Petitioner argues that the appellate court did not apply the

17  *Strickland* standard to his claim of ineffective assistance of counsel.   (Doc. 1 at 16.)

18  Contrary to Petitioner's assertion, the appellate court recognized and applied the correct,

19  controlling legal standard.   (Doc. 9, Ex. L.)   As discussed below, Petitioner has not

20  shown that the state court's resolution of his claim was contrary to or an unreasonable

21  application *Strickland*, or that it was based on an unreasonable determination of the facts.

22              1.     **Asperger's Syndrome**

23              Petitioner asserts that trial counsel were deficient for failing to investigate the

24  "likelihood" that Petitioner suffers from Asperger's Syndrome. (Doc. 1 at 20.)  Petitioner

25  _____

26      [7]  *See Knapp v. Hardy*, 523 P.2d 1308, 1312 (Ariz. 1974) (permitting retained
    counsel to associate with the public defender).

27

28      [8]  On habeas corpus review, the district court reviews that "last reasoned state
    court opinion." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Here, the Arizona Court
    of Appeals' decision is the last reasoned state court opinion.  (Doc. 9, Ex. A.)

argues that because the court had the discretion to impose a sentence from ten to seventeen years, there is a reasonable probability that had counsel presented evidence of Asperger's Syndrome, the sentencing judge would have imposed a shorter term of imprisonment.  (Doc. 1 at 22.)  At sentencing, the court stated that Petitioner had been "unusually honest" and "candid," but stated that he was "not sure how much responsibility [Petitioner] truly accept[ed]," or if he "under[stood] the impact of what [he had] done" based, in part, on Petitioner's statements during the sentencing hearing that he didn't "belong in prison," and that he was a "caring father."  (Doc. 9, Ex. F at 47-48.) Petitioner argues that had counsel presented evidence that he suffered from Asperger's Syndrome, it would have cast Petitioner's post-plea comments that the court found troubling in a different light.  (Doc. 1 at 23.)  Petitioner contends that his post-plea comments were "abnormal social displays" that showed a lack of empathy, which is typical of someone with Asperger's Syndrome.  (*Id.* at 23.)

Before Petitioner entered the plea agreement, Petitioner's trial counsel moved for a mental competency examination based on, among other things, Petitioner's "odd" statements "about his childhood and his family relationships," which Petitioner now claims are indicative of Asperger's Syndrome.  (Doc. 1, Ex. E.)  The trial court ordered the examination and two psychologists separately examined Petitioner and concluded that he had no discernible mental disease or defect.  (Doc. 1, Exs. F, H-I.)  Petitioner also took a "Mini Mental Status Exam" and received the highest possible score on it (30 out of 30), which placed him in the "no apparent impairment" category.  (Doc. 1, Ex. H.)  During his examination with Dr. Margaret Marshall, one of the psychologists who examined him, Petitioner stated that there was no possibility of a mental disease or defect on his part. (Doc. 1, Ex. H at 2.)

On post-conviction review, Petitioner presented a letter from his mother in which she stated that she suspected that Petitioner might have Asperger's Syndrome.  (Doc. 9, Ex. A.)  He did not present any evidence confirming that he had Asperger's Syndrome and, in his Petition, concedes that he cannot conclusively establish that he suffers from

Asperger's Syndrome.  (Doc. 1 at 24.)  He asserts that the lack of evidence regarding Asperger's Syndrome is attributable to trial counsel's deficient performance.  Although the lack of such evidence at sentencing may have been attributable to trial counsel, Petitioner has the burden on § 2254 review of establishing that counsel's performance was deficient and he must offer more than speculation in support of his claims.  *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) ("conclusory suggestions that his trial and state appellate counsel provided ineffective assistance fall far short of stating a valid claim of constitutional violation.").

Even if the Court were to find that counsel were deficient in failing to investigate whether Petitioner had Asperger's Syndrome, Petitioner has not shown that he was prejudiced by counsel's deficient performance.[9]  Although Petitioner asserts that he might have Asperger's Syndrome, his assertion is speculative and he has not identified the evidence counsel would have uncovered had they conducted a further investigation into whether Plaintiff had Asperger's Syndrome.  *See Hall v. Head*, 310 F.3d 683, 704-05 (11th Cir. 2002) (stating that the court cannot "assume that had [the defendant] undergone further examination the possible 'diagnosis' . . . .would have been made.

_____

[9]   The cases Petitioner cites do not support a different result.  In *Summerlin v. Schriro*, 427 F.3d 623, 631 (9th Cir. 2005), the court found trial counsel's failure to investigate potential mitigating evidence at the penalty phase of a capital murder case was ineffective assistance.  Unlike this case, *Summerlin* was a capital case in which "a criminal defendant has a constitutionally protected right to provide the jury with mitigating evidence." *Id.* at 630.  The *Summerlin* court found that had counsel conducted even a minimal investigation, he would have been able to develop testimony about Petitioner's tortured family history, including that his alcoholic mother beat him and frequently locked him in a room with ammonia fumes, petitioner frequently received electroshock treatments to control his temper, petitioner had a learning disability that left him functionally mentally retarded, and that he had been diagnosed as a paranoid schizophrenic and treated with anti-psychotic medication. *Id.* at 631.

In another capital case, *Hendricks v. Calderon*, 70 F.3d 1032, 1043 (9th Cir. 1995), the court found counsel ineffective for failing to investigate the defendant's mental health as a mitigating factor in a penalty phase hearing when counsel was on notice that the defendant might be mentally impaired.  The court noted that minimal investigation would have uncovered a "storehouse of information chronicling [the defendant's] miserable life story." *Id.*  Here, even if counsel was ineffective in failing to investigate whether Petitioner has Asperger's Syndrome, Petitioner has not shown prejudice because he was not shown what evidence counsel would have uncovered other than a letter from his mother speculating that he might have Asperger's Syndrome.

'Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.'") (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002)); *Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced"); *Henry v. Ryan*, 2009 WL 692356 at *73-74 (D. Ariz. Mar. 17, 2009) (petitioner's claim of ineffective assistance of counsel failed because he did not "identify the mitigating information omitted at sentencing").   Accordingly, Petitioner has not established that counsel were ineffective for failing to investigate whether he had Asperger's Syndrome and, thus, he was not shown that the state court's resolution of this claim was contrary to or based on an unreasonable application of federal law, or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

## 2.        Evidence of Traumatic Childhood

Petitioner also argues that trial counsel were ineffective for failing to investigate his family background.  He asserts that counsel were put on notice that he had a difficult childhood.  (Doc. 1, Exs. A, B, C, E.)[10]  Petitioner argues that the failure to investigate his childhood was prejudicial because the sentencing judge indicated that he "wish[ed he] had heard a little more about" Petitioner's difficult childhood.  (Doc. 1, Ex. P. at 47-48.) Petitioner argues that this statement suggests that, had the sentencing judge heard "a more detailed accounting of the evidence, [he] would have weighed its import differently." (Doc. 1 at 22.)

Petitioner has not shown that counsel were ineffective for failing to investigate and present evidence of his traumatic childhood at sentencing.  Petitioner's allegations do not identify the mitigating information counsel would have uncovered had they investigated Petitioner's childhood; Petitioner's allegations also do not consider the mitigating evidence that was before the court at sentencing.  *See Henry*, 2009 WL 692356, at *74

---

[10]   These exhibits appear at Doc. 1 at 32-34, Doc. 1 at 35-36, Doc. 1 at 37-38, and Doc. 1-1 at 3-5, respectively.

1   (noting that the petitioner failed to identify the omitted mitigating evidence and failed to
2   consider that the court had evidence of the petitioner's childhood and mental health
3   before it at sentencing).

4          The presentence report included evidence that Petitioner had been physically and
5   verbally abused by his father, that his father sexually molested other children in the
6   family, and that Petitioner's cousin sexually abused him from the age of seven to age
7   twelve.  (Doc. 1, Ex. N at 2.)  The presentence report also indicated that Petitioner had a
8   physical attraction to his mother and engaged in inappropriate sexual contact with her
9   when he was a teenager.  (Doc. 1, Ex. N. at 2.)  This evidence was presented to the
10  sentencing court and the court noted Petitioner's difficult childhood at sentencing.
11  (Doc. 9, Ex. F at 47-48.)

12         In addition to the presentence report, several individuals who testified on
13  Petitioner's behalf at sentencing mentioned his difficult childhood.  (*Id.* at 21, 24, 28.)
14  Although the court indicated that it would have liked to have heard more about
15  Petitioner's childhood (*id.* at 48), Petitioner has not shown that there was any additional
16  mitigation evidence that counsel would have uncovered had counsel further investigated
17  Petitioner's childhood.  Petitioner's conclusory allegations do not warrant habeas corpus
18  relief.[11]  *See Beaver*, 93 F.3d at 1195.

19         Accordingly, Petitioner has not established that counsel were ineffective for
20  failing to investigate his difficult childhood and, thus, he has not shown that the state
21  court's resolution of this claim was contrary to or based on an unreasonable application
22  for federal law, or that it was based on an unreasonable determination of the facts.  *See* 28
23  U.S.C. § 2254(d).

---

24
25         [11]  Respondents argue that because Petitioner's alleged childhood difficulties
ended when he was twelve, his difficult childhood would have been given little weight.
(Doc. 9 at 14) (citing *State v. Prince*, 250 P.3d 1145, 1170 (Ariz. 2011) (traumatic
26  childhood and teenage years correctly given "little weight" as a mitigating factor for a
murder committed at age twenty six).)  Although the presentence report indicates that
27  Petitioner's cousin stopped sexually abusing Petitioner when he was twelve, it does not
indicate when the other childhood difficulties ended.  (Doc. 1, Exs. N.)  Accordingly, the
28  Court does not rely on this reason in determining whether Petitioner has established
ineffective assistance of counsel.

1

     **D.    Ground Two — Sentencing Errors**

2       In Ground Two, Petitioner argues that the trial court violated his Due Process

3  rights by illegally enhancing his sentences without a factual basis. [12] (Doc. 1 at 7.)

4  Petitioner asserts that the court applied the sentencing enhancement in

5  Ariz. Rev. Stat. § 13-604.01 to each count of conviction without first making the required

6  finding that Petitioner's conduct was "focused on, directed against, aimed at, or target[ed]

7  a victim under the age of fifteen." (*Id.*)  Petitioner does not dispute that the victim, his

8  ten-year-old daughter, was under fifteen at the time of the incidents giving rise to his

9  convictions.  (Doc. 1 at 24-26.)  Rather, he argues that to activate the sentencing

10  enhancement provided in § 13-604.01 something more than the age of the victim must be

11  found.  (Doc. 1, at 25.)  Petitioner asserts that "something more" has been defined by

12  Arizona courts as conduct that is focused on, directed against, aimed at, or targets a

13  victim under the age of fifteen. [13] (*Id.*)

14       Petitioner concedes that he waived, in his plea agreement, his right to have a jury

15  determine any facts used to enhance his sentence.  (Doc. 1 at 26.)  However, he argues

16  that the trial court failed to make the required "targeting" finding by a preponderance of

17      _____

18     [12] Petitioner also asserts that the trial court did not have jurisdiction to impose
enhanced sentences because his guilty plea lacked a factual basis for all essential

19  elements of the crime charged.  (Doc. 1 at 26.)  The cases Petitioner cites are not
applicable here because Petitioner does not assert that he was unaware of the elements of

20  the crime and he does not claim that he did not admit sufficient facts to support a finding
of guilt.  *See McCarthy v. United States*, 394 U.S. 467, 471 (1969) ("[A] judge must

21  determine that 'the conduct which the defendant admits constitutes the offense charged.'
. . . Requiring this . . . is designed to 'protect a defendant who is in the position of

22  pleading voluntarily with an understanding of the nature of the charge but without
realizing that his conduct does not actually fall within the charge.'") (citing Fed. R.

23  Crim.P. 11); *Braxton v. United States*, 500 U.S. 344, 349 (1991) (stating that the fact
supporting the more serious offense must be "specifically established" on the record).

24     [13] Because the court of appeals did not adjudicate this claim on the merits, but
denied relief on a procedural ground, the deferential standard in 28 U.S.C. § 2254(d) does

25  not apply.  Rather, the Court reviews Ground Two for constitutional error and, if the
Court finds such error, considers whether it was harmless under *Brecht*.  *See Fry v. Pliler*,

26  551 U.S. 112, 121-22 (2007) (holding that "in § 2254 proceedings a court must assess the
prejudicial impact of constitutional error in a state-court criminal trial under the

27  'substantial and injurious effect' standard set forth in *Brecht* . . . ; whether or not the state
or appellate court recognized the error and reviewed it for harmlessness . . . .");  *Bains v.*

28  *Cambra*, 204 F.3d 964, 976 (9th Cir. 2000) (holding that the *Brecht* standard applies in
all § 2254 cases).

1   the evidence as required by the plea agreement.  (Doc. 1 at 26.)  He complains that

2   because the trial court did not make findings of the facts used to enhance his sentence, his

3   rights to Due Process under the Fourteenth Amendment to the U.S. Constitution were

4   violated.

5          In *State v. Williams*, 854 P.2d 131, 132 (1993). the Arizona Supreme Court held

6   that to activate the special sentencing provisions of Ariz. Rev. Stat. § 13-604.01, there

7   must be a finding that the offense conduct "focused on, directed against, aimed at, or

8   targeted a victim under the age of fifteen."  The Supreme Court in *Blakely v. Washington*

9   held that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence

10  enhancements so long as the defendant either stipulates to the relevant facts or consents

11  to judicial factfinding."  542 U.S. 296, 310 (2004).  Here, Petitioner consented to judicial

12  factfinding, but argues that the trial court did not place on the record its factual findings

13  as to the enhancement of sentences in violation of the Due Process Clause.[14]

14         Even assuming the trial court committed constitutional error in failing to state on

15  the record its factual findings supporting the application of the sentencing provisions in

16  Ariz. Rev. Stat. § 13-604.01, any error is harmless under the *Brecht* standard and does not

17  warrant habeas corpus relief.  *See Brecht,* 507 U.S. at 638; *see also Calderon*, 525 U.S. at

18  145-57 (the *Brecht* harmless error analysis applies to habeas review of a sentencing

19  error).  The test is whether such error had a "substantial and injurious effect" on the

20  sentence.  *Id.*  (holding that for habeas relief to be granted based on constitutional error in

21  capital penalty phase, error must have had substantial and injurious effect on the jury's

22  verdict in the penalty phase).

23  _____

24         [14]  Respondents argue that Petitioner's claim that the sentencing enhancement was
    not supported by a factual basis involves a violation of state law and is therefore not
25  cognizable in habeas proceedings.  (Doc. 9 at 16); *see* 28 U.S.C. § 2254(a) (permitting a
    federal court to entertain a habeas application only on the claims that petitioner is in
26  custody in violation of the Constitution or laws or treaties of the United States).
    Respondents claim that Petitioner essentially asserts a "purported violation of Arizona
27  Rule of Criminal Procedure 17.3, which requires a factual basis for guilty pleas."  (Doc. 9
    at 16.)  To the extent that Petitioner's claim is based on the court's failure to comply with
28  Arizona Rules of Criminal Procedure 17.3 and 26.2, his claims are not cognizable on
    habeas corpus review.

- 20 -

1       Here, the record contained sufficient evidence to support, by a preponderance of

2   the evidence, factual findings supporting the enhancement of Petitioner's sentences under

3   Ariz. Rev. Stat. § 13-604.01.  The victim was Petitioner's ten-year-old daughter.  (Doc. 1,

4   Ex. D at 4, 14.)  In recounting the factual bases for his guilty pleas, Petitioner admitted

5   that he had intentionally or knowingly molested his daughter by touching her vagina, that

6   he had intentionally or knowingly attempted to molest his daughter, and that he had

7   intentionally or knowingly touched, fondled, or manipulated his daughter's breasts.

8   (Doc. 9, Ex. D. at 14-15.)  The court found that there were "factual bases for each of the

9   pleas" and accepted Petitioner's guilty pleas.  (*Id.* at 16.)  Petitioner's actions, admitted

10  during the change of plea hearing, were "focused on, directed against, aimed at, or

11  targeted a victim under the age of fifteen."  *See Williams*, 854 P.2d at 132.

12      Additionally, as the Arizona Supreme Court has observed, "[a]s a practical matter,

13  the question of whether the child victim is the target of the defendant's criminal conduct

14  will rarely be an issue given the nature of the crimes listed in A.R.S. § 13-604.01.  It is

15  impossible   to   imagine   how   sexual . . . molestation,   sexual   conduct,   sexual

16  abuse . . . could be committed without targeting minors."  *Id*. at 136-37.  *In State v.*

17  *Sepahi*, which Petitioner cites, the Arizona Supreme Court held that the defendant's

18  intent to shoot the victim, who was a minor, was sufficient to constitute a dangerous

19  crime against children.  78 P.3d 734, 735 (2003).

20      Considering the facts in the record supporting the enhanced sentences under

21  Ariz. Rev. Stat. § 13-604.01, the Court finds that any error by the trial court with regard

22  to its factfinding at sentencing did not have a "substantial and injurious effect or

23  influence in determining the [sentences]."  *Larson v. Palmateer*, 515 F.3d 157, 1064-65

24  (9th Cir. 2008) (quoting *Brecht*, 507 U.S. at 1064-65).  Accordingly, any error in the trial

25  court's failure to specifically state on the record its factual findings in support of its

26  application of Ariz. Rev. Stat. 13-604.01 is harmless, and Petitioner is not entitled to

27  habeas corpus relief based on his challenge to his sentences asserted in Ground Two.

28

1

      **E.**    **Evidentiary Hearing**

2

     Petitioner asserts that he is entitled to an evidentiary hearing on his claim that

3

counsel was ineffective at sentencing for failing to present evidence regarding

4

Petitioner's traumatic childhood and that he may suffer from Asperger's Syndrome.

5

(Doc. 1 at 17-19.)  Petitioner is not entitled to an evidentiary hearing in this Court.

6

     The Supreme Court's decision in *Cullen v. Pinholster*, __ U.S.__, 131 S. Ct. 1388,

7

1398 (2011), makes clear that review of § 2254(d) claims "is limited to the record that

8

was before the state court that adjudicated the claim on the merits."  The Supreme Court

9

reasoned that the "backward-looking language" of § 2254(d)(1) "requires an examination

10

of the state-court decision at the time it was made," and thus the record under review

11

must be "limited to the record in existence at that same time *i.e.*, the record before the

12

state court."  *Id*. at 1398.  Accordingly, under *Pinholster*, Petitioner is not entitled to an

13

evidentiary hearing.

14

     Further, an evidentiary hearing is not warranted when, as in this case, even

15

assuming Petitioner's allegations are true, he is not entitled to habeas corpus relief

16

because he has not shown that counsel's performance was deficient for failing to

17

investigate additional mitigation evidence or that he suffered prejudice as a result of

18

counsel's alleged deficient performance.  *See Schriro v. Landrigan*, 550 U.S. 465, 481

19

(2007) (district court properly exercised discretion to deny evidentiary hearing when,

20

even assuming the truth of all facts sought to be proven at an evidentiary hearing, claim

21

failed on merits); *West v. Ryan*, 608 F.3d 477, 485-90 (9th Cir. 2010) (when defendant

22

failed to allege facts that, if found to be true, would establish a colorable claim under

23

*Strickland*, there was "nothing to be determined in an evidentiary hearing" and the district

24

court did not abuse its discretion by denying one); *Estrada v. Scribner*, 512 F.3d 1227,

25

1235 (9th Cir. 2008) ("[A] federal court must consider whether such a[n] [evidentiary]

26

hearing could enable an applicant to prove the petition's factual allegations, which, if

27

true, would entitle the applicant to federal habeas relief."); *Jones*, 66 F.3d at 205

28

("conclusory suggestions that his trial and appellate state counsel provided ineffective

1    assistance fall far short of stating a valid claim of constitutional violation" and did not

2    entitle petitioner to an evidentiary hearing).

3    **IV.    Conclusion**

4            Based on the foregoing, the Petition for Writ of Habeas Corpus should be denied

5    and dismissed.

6            Accordingly,

7            **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be

8    **denied and dismissed**.

9            **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

10   leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not

11   made a substantial showing of the denial of a constitutional right.

12           This recommendation is not an order that is immediately appealable to the Ninth

13   Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate

14   Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The

15   parties have fourteen days from the date of service of a copy of this recommendation

16   within which to file specific written objections with the Court.  *See* 28

17   U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days

18   within which to file a response to the objections.  Failure to file timely objections to the

19   Magistrate Judge's Report and Recommendation may result in the District Court's

20   acceptance of the Report and Recommendation without further review.  *See United States*

21   *v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

1    Failure to file timely objections to any factual determination of the Magistrate

2    Judge may be considered a waiver of a party's right to appellate review of the findings of

3    fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

4    *See* Fed. R. Civ. P. 72.

5    Dated this 24th day of March, 2014.

6

7

8    _____

9    Bridget S. Bade
     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28